UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DONNA STALLING,                                    )        No. EDCV 07-1677-RC
                                                   )
            Plaintiff,                             )
                                                   )        OPINION AND ORDER
      v.                                           )
                                                   )
MICHAEL J. ASTRUE,                                 )
Commissioner of Social Security,                   )
                                                   )
            Defendant.                             )
_____)

      Plaintiff Donna Stalling filed a complaint on January 4, 2008,
seeking review of the decision denying her application for disability
benefits.  On June 2, 2008, the Commissioner answered the complaint,
and the parties filed a joint stipulation on August 13, 2008.


**BACKGROUND**

**I**

      On March 8, 2002, plaintiff applied for disability benefits under
the Supplemental Security Income program of Title XVI of the Social
Security Act ("the Act"), 42 U.S.C. § 1382(a), claiming an inability
to work since February 1, 1999, due to depression and diabetes.

1  Certified Administrative Record ("A.R.") 13, 52-54, 63.  The
2  plaintiff's application was initially denied on May 10, 2002, and was
3  denied again on December 31, 2003, following reconsideration.  A.R.
4  24-27, 30-35.  The plaintiff then requested an administrative hearing,
5  which was held before Administrative Law Judge Joseph Schloss ("the
6  ALJ") on December 16, 2004.  A.R. 36, 394-419.  On April 7, 2005, the
7  ALJ issued a decision finding plaintiff is not disabled.  A.R. 9-21.
8  The plaintiff appealed this decision to the Appeals Council, which
9  denied review on May 18, 2005.  A.R. 5-8.

10

11       On July 15, 2005, plaintiff filed her first complaint seeking
12  review of the Commissioner's decision denying her application for
13  disability benefits, <u>Stalling v. Astrue</u>, EDCV 05-0610-RC ("Stalling
14  I"),[1] and on March 7, 2007, this Court granted plaintiff's request for
15  relief and remanded the matter to the Social Security Administration
16  under 42 U.S.C. § 405(g), sentence four.  A.R. 451-67.  The Appeals
17  Council, in turn, remanded the matter for further administrative
18  proceedings, A.R. 468-70, and on September 19, 2007, the ALJ held a
19  new administrative hearing.  A.R. 501-26.  On October 22, 2007, the
20  ALJ again issued a decision finding plaintiff is not disabled, A.R.
21  420-35, and this decision is before the Court for review.

22

23                                **II**

24       The plaintiff, who was born on March 10, 1965, is currently 44
25  years old.  A.R. 52, 397.  She has an eleventh-grade education and has

26

27       [1]  Pursuant to Fed. R. Evid. 201, this Court takes judicial
28  notice of relevant documents in Stalling I.

2

1  never worked.  A.R. 64, 69, 397-98, 400.

2

3       This Court, in its Stalling I decision, summarized plaintiff's

4  relevant medical evidence,[2] as follows:

5

6       Between January 10, 2000, and October 9, 2003, plaintiff

7       received mental health treatment at the San Bernardino

8       County Department of Behavioral Health ("SBC Dept."), where

9       she was prescribed various medications and group therapy.

10      On September 30, 2000, plaintiff was diagnosed with severe

11      recurrent major depressive disorder and her Global

12      Assessment of Functioning ("GAF") was determined to be 45.[3]

13      On February 7, 2001, Michael Oliver, a licensed clinical

14      social worker, diagnosed plaintiff with recurrent moderate

15      major depression, determined her GAF to be 50, and opined

16      plaintiff had a "moderate" dysfunction rating due to

17      depression, a history of drug use, and because she "can't

18      work" and her children were taken away from her.  Also on

19      February 7, 2001, Jesse Devera, M.D., diagnosed plaintiff

20      with recurrent moderate major depression and prescribed

21 ────────────────

22      [2]  Although plaintiff has both physical and mental
   complaints, plaintiff disputes only the ALJ's assessment of her
23 mental complaints.  Therefore, this decision, like Stalling I,
   addresses only plaintiff's mental complaints.

24
        [3]  A GAF of 45-50 means that the plaintiff exhibits
25 "[s]erious symptoms (e.g., suicidal ideation, severe obsessional
   rituals, frequent shoplifting) or serious impairment in social,
26 occupational, or school functioning (e.g. no friends, unable to
   keep a job)."  American Psychiatric Ass'n, Diagnostic and
27 Statistical Manual of Mental Disorders, 34 (4th ed. (Text
   Revision) 2000).
28

                                    3

medication to her.  [¶]  On May 9, 2002, Kenneth D. Michael,
M.D., a nonexamining psychiatrist, diagnosed plaintiff as
having major depression, with no psychosis, and opined
plaintiff has "mild" restriction in her activities of daily
living, "mild-to-moderate" difficulties maintaining social
functioning, "moderate" difficulties maintaining
concentration, persistence or pace, and there was
"insufficient evidence" to ascertain whether plaintiff
experienced any episodes of decompensation.  Dr. Michael
further opined plaintiff is "moderately" limited in her
ability to understand, remember, and carry out detailed
instructions and to interact appropriately with the general
public, but is otherwise not significantly limited.
Between May 21 and May 30, 2003, plaintiff was involuntarily
hospitalized at Community Hospital of San Bernardino ("SB
Hospital"), based on her suicidal ideations.  She was
diagnosed with a schizoaffective disorder, depression, and a
past history of polychemical dependency, and she was
determined to have a GAF of 25[4] upon admission and a GAF of
60 upon discharge.[5]  [¶]  On January 26, 2004, plaintiff was

_____

    [4]  A GAF of 25 means that the plaintiff's "[b]ehavior is
considerably influenced by delusions or hallucinations or serious
impairment in communication or judgment (e.g., sometimes
incoherent, acts grossly inappropriately, suicidal preoccupation)
or inability to function in almost all areas (e.g., stays in bed
all day; no job, home, or friends)."  American Psychiatric Ass'n,
Diagnostic and Statistical Manual of Mental Disorders, 34 (4th
ed. (Text Revision) 2000).

    [5]  A GAF of [55-]60 indicates "[m]oderate symptoms (e.g.,
flat affect and circumstantial speech, occasional panic attacks)
or moderate difficulty in social, occupational, or school

4

1    initially examined at the Riverside County Department of

2    Mental Health ("RCDMH"), where she was diagnosed with a

3    schizoaffective disorder, bipolar type, and began treatment.

4    On March 16, 2004, plaintiff was involuntarily hospitalized

5    at San Gorgino Memorial Hospital with suicidal ideations,

6    after holding a knife to her throat.  She was transferred to

7    Riverside County Regional Medical Center ("Medical Center"),

8    where she remained involuntarily confined until March 22,

9    2004.  Upon admission to the Medical Center, plaintiff was

10   diagnosed with a schizoaffective disorder and her GAF was

11   determined to be 40.[6]  Plaintiff was treated with

12   medication, and when she was discharged, her GAF was

13   determined to be 65.[7]  On March 23, 2004, plaintiff was

14   again examined at RCDMH, where she was diagnosed with

15   recurrent moderate major depression and an unspecified

16

17   functioning (e.g., few friends, conflicts with peers or co-
     workers)."  Id.
18

19   [6]  A GAF of 40 indicates "[s]ome impairment in reality
     testing or communication (e.g., speech is at times illogical,
20   obscure, or irrelevant) or major impairment in several areas,
     such as work or school, family relations, judgment, thinking, or
21   mood (e.g., depressed man avoids friends, neglects family, and is
     unable to work; child frequently beats up younger children, is
22   defiant at home, and is failing at school).  American Psychiatric
     Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34
23   (4th ed. (Text Revision) 2000).

24   [7]  A GAF of 65 indicates "[s]ome mild symptoms (e.g.,
25   depressed mood and mild insomnia) or some difficulty in social,
     occupational, or school functioning (e.g., occasional truancy, or
26   theft within the household), but generally functioning pretty
     well, has some meaningful interpersonal relationships."  American
27   Psychiatric Association, Diagnostic and Statistical Manual of
     Mental Disorders, 34 (4th ed. (Text Revision) 2000).
28

5

1   psychotic disorder, and her GAF was determined to be 50.

2   [¶]   On January 13, 2005, Robin Rhodes-Campbell, Ph.D., a

3   licensed clinical psychologist, examined plaintiff and

4   conducted psychological testing on her.   Dr. Rhodes-Campbell

5   diagnosed plaintiff with a schizoaffective disorder, by

6   history, determined her GAF to be 65, and concluded

7   plaintiff was malingering.   Specifically,   Dr. Rhodes-

8   Campbell found plaintiff gave a poor effort on testing, the

9   Minnesota Multiphasic Personality Inventory was invalid,

10  showing a "strong possibility" plaintiff was exaggerating or

11  feigning psychological symptoms, the test of memory

12  malingering showed plaintiff is likely malingering memory

13  deficits, and the Miller Forensic Assessment of Symptoms

14  Test indicated plaintiff was malingering psychiatric

15  symptoms.   Dr. Rhodes-Campbell concluded plaintiff should

16  have no impairment in understanding, remembering, and

17  carrying out short and simple or detailed instructions,

18  making judgments on simple work-related decisions, or

19  relating appropriately to the public, supervisors and co-

20  workers, but her ability to withstand the stress and changes

21  associated with an 8-hour workday and day-to-day work

22  activities is moderately impaired.

23

24  Stalling I at 2:22-6:9 (footnotes renumbered; citations omitted).

25

26      Following remand, plaintiff submitted additional medical

27  evidence, which shows that on April 2, 2007, Nellie Anosa, M.D., a

28  psychiatrist at RCDMH, examined plaintiff and diagnosed her with a

1 non-psychotic recurrent major depressive episode and amphetamine
2 dependence, and determined plaintiff's GAF was 55.  A.R. 495-96.  Dr.
3 Anosa observed that plaintiff was alert, coherent and oriented (x3)
4 with a neutral mood, average intelligence, and unimpaired judgment and
5 insight.  A.R. 495.  There was no evidence of auditory hallucinations
6 and no delusions or suicidal or homicidal ideations were noted.  Id.
7
8     Medical expert David M. Glassmire, Ph.D., a psychologist,
9 testified at the 2007 administrative hearing that plaintiff has a
10 schizoaffective disorder and methamphetamine abuse, in remission, and
11 her condition does not meet or equal a listed impairment.  A.R. 504-
12 12.  Dr. Glassmire opined plaintiff has a "mild" impairment in her
13 activities of daily living, "moderate" difficulties maintaining social
14 functioning and concentration, persistence or pace, and has had one or
15 two episodes of decompensation.  A.R. 507-08.  Dr. Glassmire also
16 opined plaintiff should be limited to simple repetitive tasks of two
17 or three steps and only occasional, non-intense contact with the
18 public, co-workers and supervisors, no hypervigilance and no
19 responsibility for the safety of other employees.  A.R. 508-09.
20
21                           **DISCUSSION**
22                              **III**
23     The Court, pursuant to 42 U.S.C. § 405(g), has the authority to
24 review the Commissioner's decision denying plaintiff disability
25 benefits to determine if his findings are supported by substantial
26 evidence and whether the Commissioner used the proper legal standards
27 in reaching his decision.  Bruce v. Astrue, 557 F.3d 1113, 1115 (9th
28 Cir. 2009); Bray v. Astrue, 554 F.3d 1219, 1222 (9th Cir. 2009).

1    "In determining whether the Commissioner's findings are supported

2    by substantial evidence, [this Court] must review the administrative

3    record as a whole, weighing both the evidence that supports and the

4    evidence that detracts from the Commissioner's conclusion." Reddick

5    v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Holohan v. Massanari,

6    246 F.3d 1195, 1201 (9th Cir. 2001).   "Where the evidence can

7    reasonably support either affirming or reversing the decision, [this

8    Court] may not substitute [its] judgment for that of the

9    Commissioner." Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007),

10   cert. denied, 128 S. Ct. 1068 (2008); Bray, 554 F.3d at 1222.

11

12       The claimant is "disabled" for the purpose of receiving benefits

13   under the Act if she is unable to engage in any substantial gainful

14   activity due to an impairment which has lasted, or is expected to

15   last, for a continuous period of at least twelve months.   42 U.S.C.

16   § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).   "The claimant bears the

17   burden of establishing a prima facie case of disability." Roberts v.

18   Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122

19   (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

20

21       Applying the five-step sequential evaluation process set forth in

22   the Stalling I decision, the ALJ found plaintiff has not engaged in

23   substantial gainful activity since her application date of March 8,

24   2002.   (Step One).   The ALJ then found plaintiff has the severe

25   impairments of:   a schizoaffective disorder, a depressive disorder and

26   a hearing disorder (Step Two);[8] however, she does not have an

27   ────────────────────

28       [8]   In reaching these conclusions, the ALJ found plaintiff
     has "mild" limitations in the activities of daily living,

8

1  impairment or combination of impairments that meets or equals a

2  Listing.  (Step Three).  The ALJ next determined plaintiff has no past

3  relevant work.  (Step Four).  Finally, the ALJ determined plaintiff

4  can perform a significant number of jobs in the national economy;

5  therefore, she is not disabled.  (Step Five).  <u>See</u> A.R. 423-35.

6

7                                    **IV**

8      A claimant's residual functional capacity ("RFC") is what she can

9  still do despite her physical, mental, nonexertional, and other

10 limitations.  <u>Mayes v. Massanari</u>, 276 F.3d 453, 460 (9th Cir. 2001);

11 <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  Here,

12 the ALJ found plaintiff has the RFC to perform medium work,[9] with the

13 following non-exertional limitations:

14

15     The [plaintiff] can do simple repetitive tasks that are two

16     to three steps; she can have occasional contact with the

17     public, co-workers, and supervisors; she is precluded from

18     intense contact; she is precluded from tasks that require

19     hypervigilance or the safety of others; she should have no

20     jobs requiring quotas; and she should not be exposed on a

21     repetitive basis to loud noise or any tasks that require

22     fine hearing.

23

24 "moderate" difficulties maintaining social functioning and

25 concentration, persistence or pace, and she has experienced one
   to two episodes of decompensation.

26

27     [9]  Under Social Security regulations, "[m]edium work
   involves lifting no more than 50 pounds at a time with frequent
   lifting or carrying of objects weighing up to 25 pounds."  20

28 C.F.R. § 416.967(c).

                                    9

A.R. 427.  However, plaintiff contends the ALJ's decision is not supported by substantial evidence because the ALJ did not properly consider her testimony, lay witness evidence, and the 2001 opinion of licensed clinical social worker Michael Oliver.

###     A.   Credibility:

The plaintiff testified at the 2004 administrative hearing that she cannot work due to "depression, panic attacks, and stuff like that." A.R. 400, 404.  She stated she often hears voices telling her to hurt herself, and she gets a bad panic attack every couple of months. A.R. 408-11.  The plaintiff also explained at both administrative hearings that she is isolated and does not associate with anybody, but just watches television or sleeps, A.R. 408, 412-13, 516-17, but she does not like to be by herself because she gets "real shaky and stuff[,]" is often emotional and sometimes feels as though other people are out to harm her.  A.R. 408-09, 412, 516.  Plaintiff also testified she has diabetes, back pain, arthritis in her left knee, and she is completely deaf in her left ear.  A.R. 404-07, 515. The plaintiff testified in 2004 that when it gets cold, she cannot move her left knee, and if she walks to the corner store, her knee hurts, and she has to stop and rest before she gets there.  A.R. 405, 414.  Finally, plaintiff stated at both hearings that she has difficulty sleeping, takes sleeping pills, and is always tired.  A.R. 412, 516.

Once a claimant has presented objective evidence she suffers from an impairment that could cause pain or other nonexertional

//

1   limitations,[10] the ALJ may not discredit the claimant's testimony

2   "solely because the degree of pain alleged by the claimant is not

3   supported by objective medical evidence." Bunnell v. Sullivan, 947

4   F.2d 341, 347 (9th Cir. 1991) (en banc); Moisa v. Barnhart, 367 F.3d

5   882, 885 (9th Cir. 2004).  Thus, if the ALJ finds the claimant's

6   subjective complaints are not credible, he "'must provide specific,

7   cogent reasons for the disbelief.'" Greger v. Barnhart, 464 F.3d 968,

8   972 (9th Cir. 2006) (citations omitted); Orn v. Astrue, 495 F.3d 625,

9   635 (9th Cir. 2007).  "Factors that an ALJ may consider in weighing a

10  claimant's credibility include reputation for truthfulness,

11  inconsistencies in testimony or between testimony and conduct, daily

12  activities, and 'unexplained, or inadequately explained, failure to

13  seek treatment or follow a prescribed course of treatment.'" Orn, 495

14  F.3d at 636 (citations omitted); Thomas v. Barnhart, 278 F.3d 947,

15  958-59 (9th Cir. 2002).  Furthermore, if there is medical evidence

16  establishing an objective basis for some degree of pain and related

17  symptoms, and no evidence affirmatively suggesting the claimant is

18  malingering, the ALJ's reasons for rejecting the claimant's testimony

19  must be "clear and convincing." Morgan v. Comm'r of the Soc. Sec.

20  Admin., 169 F.3d 595, 599 (9th Cir. 1999); Carmickle v. Comm'r, Soc.

21  Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008).

22

23      Here, the ALJ found plaintiff's "statements concerning the

24  intensity, persistence, and limiting effects of [her] symptoms are not

25  _____

26      [10]  "While most cases discuss excess pain testimony rather
    than excess symptom testimony, rules developed to assure proper
27  consideration of excess pain apply equally to other medically
    related symptoms." Swenson v. Sullivan, 876 F.2d 683, 687-88
28  (9th Cir. 1989).

entirely credible" for several reasons, including that the information
plaintiff provided in a daily activities questionnaire is inconsistent
with what she told Dr. Rhodes-Campbell.  A.R. 428.  This finding is
supported by substantial evidence in the record.  A.R. 78-83, 387.
For instance, although plaintiff stated in her questionnaire that she
just lies on the couch and watches television, A.R. 78, Dr. Rhodes-
Campbell reported plaintiff "state[d] that she is able to do household
chores, run errands, shop, drive, cook, and dress and bathe herself."
A.R. 387.  An ALJ may properly rely on inconsistencies in a claimant's
statements to determine she is not a credible witness.  See, e.g.,
Bray, 554 F.3d at 1227 (ALJ properly found claimant not credible in
part when her testimony at administrative hearing contradicted her
statements to evaluating physician); Batson v. Comm'r of the Soc. Sec.
Admin., 359 F.3d 1190, 1196 (9th Cir. 2004) (ALJ properly rejected
claimant's testimony based, in part, on contradictory statements
regarding his daily activities).

     The ALJ also found plaintiff not to be credible because "[t]here
is evidence of malingering and that the [plaintiff] exaggerates."
A.R. 433.  This finding also is supported by substantial evidence in
the record, particularly Dr. Rhodes-Campbell's conclusion that
plaintiff was malingering.  A.R. 388-89.  An ALJ may properly consider
the claimant's tendency to exaggerate in rejecting her excess pain
testimony.  Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001);
Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (per curiam).
Similarly, the ALJ properly cited plaintiff's "very poor work
history," which stretched back over 15 years, A.R. 433, as a reason
supporting his adverse credibility determination.  See, e.g., Thomas,

1  278 F.3d at 959 (ALJ's finding that claimant had an "extremely poor
2  work history" and showed "little propensity to work in her lifetime"
3  supports adverse credibility determination); 20 C.F.R. § 416.929(c)(3)
4  (in assessing symptoms such as pain, fact-finder "will consider all of
5  the evidence presented, including information about [the claimant's]
6  prior work record. . . .").

8       Further, the ALJ found plaintiff was not a credible witness
9  because she "has received conservative treatment for all of her
10 physical complaints[,] consisting [solely] of medications."  A.R. 432-
11 33.  Since plaintiff has not identified any evidence in the record
12 contradicting this finding, it also supports the ALJ's adverse
13 credibility determination.  <u>Parra</u>, 481 F.3d at 751; <u>Meanel v. Apfel</u>,
14 172 F.3d 1111, 1114 (9th Cir. 1999); <u>Johnson v. Shalala</u>, 60 F.3d 1428,
15 1434 (9th Cir. 1995).  Thus, "[t]he ALJ's reasons for his credibility
16 determination were clear and convincing, sufficiently specific, and
17 supported by substantial evidence."  <u>Celaya v. Halter</u>, 332 F.3d 1177,
18 1181 (9th Cir. 2003); <u>Thomas</u>, 278 F.3d at 959.

20       **B.   Lay Witness Testimony:**
21       "Lay testimony as to a claimant's symptoms is competent evidence
22 that an ALJ must take into account, unless he or she expressly
23 determines to disregard such testimony and gives reasons germane to
24 each witness for doing so."  <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th
25 Cir. 2001); <u>Bruce</u>, 557 F.3d at 1115.  Third party function reports are
26 such competent lay evidence, and are "an important source of
27 information about a claimant's impairments."  <u>Regennitter v. Comm'r of</u>
28 <u>the Soc. Sec. Admin.</u>, 166 F.3d 1294, 1297 (9th Cir. 1999); <u>Schneider</u>

1 | v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 975 (9th Cir. 2000).

2

3      Plaintiff's daughter, Kimberly Orozco ("Kimberly"), testified at

4 the 2007 administrative hearing that plaintiff is always lying down

5 and sleeping.  A.R. 517-21.  Kimberly also testified plaintiff avoids

6 people, has no friends, and sometimes cries for no reason.  A.R. 521-

7 22.  Additionally, Kimberly stated plaintiff also has some memory

8 difficulties, such as misplacing pill bottles or the remote control.

9 A.R. 522-23.  Another daughter, Victoria Orozco ("Victoria"),

10 completed a daily activity questionnaire in which she indicated

11 plaintiff typically spends her time lying on the couch and watching

12 television.  A.R. 72-77.  Victoria also indicated plaintiff is not

13 sociable and does not leave the house unless she has an appointment,

14 and she is forgetful and has problems concentrating.  A.R. 72-73, 76.

15 Finally, Victoria indicated plaintiff often talks to herself, makes

16 weird noises with her mouth, and paces for no reason.  A.R. 77.

17

18      Here, the ALJ considered the evidence presented by plaintiff's

19 daughters, but rejected Kimberly's testimony for the same reasons he

20 rejected plaintiff's testimony and rejected Victoria's questionnarie

21 because it was inconsistent with plaintiff's responses to Dr. Rhodes-

22 Campbell.  A.R. 428.  Thus, the ALJ provided germane reasons for

23 rejecting the third-party opinions.  Carmickle, 533 F.3d at 1164;

24 Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998).

25

26      **C.   Social Worker's Opinion:**

27      Finally, plaintiff contends the ALJ's decision is not supported

28 by substantial evidence because the ALJ failed to properly consider

1  the opinion of Michael Oliver, a licensed clinical social worker, who
2  completed an assessment of plaintiff on February 7, **2001**, diagnosed
3  plaintiff as having recurrent moderate major depression, determined
4  plaintiff's GAF was 50, and opined plaintiff has a "moderate"
5  dysfunction rating due to depression and a history of drug use.  A.R.
6  152-56.

7

8      Plaintiff contends that "[a]lthough Mr. Oliver is not a physician
9  or other acceptable medical source, his opinion may qualify as a
10  treating source since he was working in conjunction with a
11  psychiatrist. . . ."  Jt. Stip. at 21:12-16.  Even if the Court treats
12  Mr. Oliver's statements and opinions as being encompassed by Dr.
13  Devera's opinions of the same date, see Stalling I at 12 n.9, it does
14  not benefit petitioner.  To the contrary, the ALJ properly considered
15  Dr. Devera's opinions and the SBC Dept. medical records in assessing
16  plaintiff's RFC, and, in so doing, specifically noted that those
17  records show plaintiff "was doing well with medication compliance.  On
18  some dates she was more depressed and failed to follow up with her
19  appointments.  She reported that she was doing well except for some
20  nightmares, but it was noted she was not in any acute distress during
21  this time period."  A.R. 429.  The plaintiff has not identified any
22  evidence refuting the ALJ's assessment of the SBC Dept. medical
23  records, which included Mr. Oliver's opinions and Dr. Devera's
24  opinions.  In fact, when Dr. Devera examined plaintiff on February 7,
25  2001, she noted plaintiff was alert and oriented (x3), had no auditory
26  or visual hallucinations, no suicidal or homicidal ideations, was
27  pleasant and cooperative and in no distress, but had decreased
28  insight, a sad affect, and a depressed mood.  A.R. 150.  On April 30,

1  2001, plaintiff was feeling better with an intact memory, was alert

2  and oriented (x3), had no auditory or visual hallucinations, no

3  suicidal or homicidal ideations, but had a sad affect and a depressed

4  mood.  A.R. 148.  The rest of plaintiff's treating notes from SBC

5  Dept. are similar.  A.R. 108-47.  Since the ALJ properly addressed

6  these notes and the SBC Dept. medical evidence, as well as Dr.

7  Glassmire's expert testimony and the opinions of examining physician

8  Dr. Rhodes-Campbell, the ALJ's RFC determination, and Step Five

9  determination, are supported by substantial evidence in the record.[11]

10 See Tonapetyan, 242 F.3d at 1149; Morgan, 169 F.3d at 600.

11

12                         **ORDER**

13      IT IS ORDERED that: (1) plaintiff's request for relief is denied;

14 and (2) the Commissioner's decision is affirmed, and Judgment shall be

15 entered in favor of defendant.

16

17 DATE:   July 22, 2009            /s/ Rosalyn M. Chapman
                                    ROSALYN M. CHAPMAN
18                                  UNITED STATES MAGISTRATE JUDGE

19

20 ──────────────

21      [11]  Indeed, despite an administrative record of more than
   500 pages, plaintiff cites only a single comment from Mr. Oliver
22 as arguably inconsistent with the ALJ's RFC assessment.  Yet, the
   ALJ was not required to specifically address Mr. Oliver's vague
23 statement that plaintiff "can't work," which, taken in context,
   appears to refer to plaintiff's complaints, rather than providing
24 an objective assessment of disability.  Mr. Oliver's statement,
   to the extent it can be read as opining plaintiff could not work
25 in 2001, is neither significant nor probative since it is not
   supported by any subsequent records from SBC Dept.  Cf.
26 Carmickle, 533 F.3d at 1165 ("Medical opinions that predate the
   alleged onset of disability are of limited relevance.").
27

28 R&R-MDO\07-1677.mdo
   7/22/09